## GALE *v.* BELKNAP COUNTY INSURANCE COMPANY.

The mere intention of a party, not manifested by any act or declaration, is not admissible to affect the rights of another person.

Where it is stipulated that a policy shall become void if any subsequent insurance shall be made on the property without consent, the first policy will not be avoided, except by a valid and legal policy, effectual and binding on the assurers.

If, then, a second policy contain a proviso, that it shall be void if any other insurance exists on the same property without consent of the company, the second policy is inoperative and invalid, by reason of the previous policy, and the earlier policy is not affected by it.

ASSUMPSIT, brought by Horace B. Gale, on a policy of insurance issued by the defendants, the Belknap County

Mutual Fire-Insurance Company, on the plaintiff's dwelling house, &c.; dated January 26, 1857, for six years. By the terms of the policy the plaintiff's application is made part of it, and the insurance is made subject to the provisions of the act of incorporation and by-laws of the company annexed to it. In the application, the applicant agrees to be bound by said act and by-laws.

The 15th section of the act of incorporation is as follows: " If insurance on any house or building shall be and subsist in said company, and in any other office, or from or by any other person or persons, at the same time, the insurance made in and by said company shall be deemed and become void, unless such double insurance subsists with the consent of the directors, signified by indorsement on the back of the policy, signed by the president and secretary."

In the 22d article of the by-laws is the following provision : " All policies, which may issue from this company, to cover property previously insured, shall be void unless notice of such previous insurance shall be given in the application ; and when a subsequent insurance shall be made on property insured by this company, without the consent of the directors in writing, the policy issued by this company shall be thereby annulled."

The application was made at the plaintiff's request, by J. J. Barrett, the defendant's agent, in the fall of 1856, signed by the plaintiff, and left in said Barrett's possession, but to be sent to the office when the plaintiff should direct it by letter. January 18, 1857, the plaintiff wrote to Barrett to send the application, and Barrett immediately forwarded it, and it was approved by the directors, and a policy issued and sent to Barrett.

On the 25th of February, 1857, the plaintiff, not having heard from Barrett, and not knowing that a policy had been sent to him, and thinking that Barrett had omitted to make his application to this company, applied to one

Parker, agent of the Farmers' Mutual Fire-Insurance Company, at Gilmanton; told him what had been done between himself and Barrett; that he had not received a policy, and was afraid Barrett had not received his letter, and had done nothing, and he wished to procure insurance in the Gilmanton company. Parker made out an application for insurance on the same property, which was signed and the expense paid by the plaintiff, and forwarded by Parker to the Gilmanton office, and a policy issued on it, dated March 2, 1857, which was sent to Parker.

The 14th section of the act of incorporation of the Gilmanton company is the same as the 15th of the act of the Belknap company, before stated.

March 7, 1857, the plaintiff received from Barrett the Belknap company's policy, and paid the expense of it; on the 10th, the Gilmanton company's policy was received by Parker, who was postmaster, and handed to the plaintiff, who was present.

On the 17th of said March the property was destroyed by fire, and the plaintiff immediately notified the defendants of the loss, without referring to any other insurance. No notice was given to the Gilmanton company, nor claim made on them. Neither Barrett, nor any officer of the Belknap company, had any notice or knowledge of the insurance in the Gilmanton company, before the fire. And neither the Gilmanton company nor any officer of it had notice or knowledge of the insurance in the Belknap company prior to the fire, except so far as the notice to Parker, before stated, is in law notice to, and knowledge by, said company.

The Gilmanton policy has not been discharged. The fire was accidental; and the parties agree that the decision shall be the same as if the jury had found that the plaintiff had no intention to defraud either company. But the defendants insist that this question is not material or competent to be submitted to a jury.

It is agreed that the plaintiff would testify, if admitted as a witness, that, from the first, his preference was to have his insurance in the Belknap company; that when he received his policy in that company he knew of the foregoing provisions of their charter and by-laws, and that he could hold under only one policy, intending then and ever after to hold under it, and not under the Gilmanton policy; that he did not communicate this intention to any one before the fire, though he did state to several persons during the fire, that he intended to keep the Belknap policy and return the other; that he did not receive the Gilmanton policy intending to hold under it, but always intended to return it the first opportunity; that the reason he did not offer to return it to Parker, when he received it in the post-office, was that there was a crowd in the office at the time, and Parker was busy about the duties of his office and store, although he saw that it was the Gilmanton policy; that he waited, in vain, some time in the office, for the purpose of getting an opportunity to return it, and reclaim the money he had paid for it; and that he went twice from his house that week before the fire, to see Parker and return the policy, taking it with him for that purpose, but did not find him at home, and so the policy remained in his hands at the fire.

It was agreed the jury would find said testimony, if admitted, to be true, and that the court may so regard it, if they find the witness competent, and the testimony admissible, which the defendants deny; and that judgment shall be rendered for the plaintiff, if the policy in suit is not affected by the other, or the case sent to the jury, as the court shall direct.

*H. Hibbard,* for the plaintiff.

*E. A. Hibbard,* for the defendants.

BELL, C. J. The insurance company resist the payment of the loss sustained by the plaintiff, on the ground that before the loss occurred their policy had become void by its own terms, by reason that the insured had procured another insurance on the same property, without the consent of their directors.

It is not and cannot be questioned here, that a policy, with stipulations like that in suit, is avoided by a subsequent insurance, obtained without the assent of the insurers. *Blanchard* v. *Atlantic Insurance Company*, 33 N. H. 9; *Fabyan* v. *Union Insurance Company*, 33 N. H. 203. But the plaintiff contends that he never accepted the second policy; and that if he had, it was by its terms not valid nor binding on the insurers, because of the previous insurance in the defendant company—the last policy containing similar provisions as to other insurance on the property, to those contained in the policy in suit.

By the law now in force the plaintiff is a competent witness, and his testimony, it is agreed, would prove his intention to hold under the Belknap policy, and not under the subsequent policy of the Gilmanton company; that he had no design to be insured in both; and that he went twice from his house the week before the fire, to see the agent of the latter company, and to return the policy, which he took with him for that purpose; but he did not find him at home. But, it distinctly appears that before the fire occurred he said nothing, either to the agent or to any one else, indicating an intention to decline, or not to accept the last policy; and we think it very clear that a policy issued upon his own application cannot be affected by any mere intention or secret determination of his own mind, not communicated to others. Its effect must depend on, and be determined by, his acts and declarations communicated to others. If acts or declarations material in the case are proved, and a question arises as to the character, purpose or effect of them, the intention

of the party acting or speaking may be shown, either directly or from circumstances. *Martin* v. *French*, 24 N. H. 440; *Norris* v. *Morrill*, 40 N. H. 395.

As to the second point, we regard the law as settled, that where, in a policy of insurance against fire, it is stipulated that the policy shall be void if any other or subsequent insurance upon the property shall be, or be made, without the consent of the company or its directors, and another is made by other insurers without such consent, which contains a similar provision, the second policy is inoperative and invalid; it does not bind the insurers, and therefore does not avoid the first policy.

This point was expressly decided in *Jackson* v. *Massachusetts Insurance Company*, 23 Pick. 418. The same principle was applied in *Clark* v. *New-England Insurance Company*, 3 Cush. 342, where it was held that if a second policy was void, for misrepresentation by the insured, of facts material to the risk, as, for instance, by denying the existence of an incumbrance on the property, it would not invalidate the previous policy; and in *Stacy* v. *Franklin Insurance Company*, 2 W. & S. 506, 544, it was held that an insurance, to avoid a policy, must be a valid and legal policy, and effectual and binding on the assurers.

This question was incidentally considered in the *Atlantic Insurance Company* v. *Goodall*, 35 N. H. 232, where it was said, upon the authority of *Jackson* v. *Massachusetts Insurance Company*, before cited, and of *Barrett* v. *Union Insurance Company*, 7 Cush. 179, where numerous authorities are cited, that it seems clear that the original insurance must always defeat the operation of that which is subsequent, when the same provision here in question is found in both charters, and its own validity must always remain unaffected by such second and abortive policy.

One case only is cited in support of the contrary doctrine—that of *Carpenter* v. *Providence Insurance Company*, 16 Peters 495—where it was held that where a policy was

procured by misrepresentation, it is not, therefore, to be treated as utterly void *ab initio.* It is merely voidable, and may be avoided upon due proof of the facts; but until avoided it must be treated, for all practicable purposes, as a subsisting policy.

The weight of this decision is not a little impaired by the case of *Carpenter* v. *Providence Insurance Company,* 1 Story 57, where the same judge, upon the same policy and upon the same facts, held, only three years before, that the policy was *utterly void.*

In our judgment neither of these decisions was correct. The policy was neither utterly void, nor was it voidable, in the sense that it was a valid and binding contract, and to be so treated, for all practical purposes, until it was avoided. On the contrary, it was an instrument invalid and inoperative, binding upon nobody, until and unless it should be ratified and confirmed by some further act on the part of the assurers, with knowledge of the facts which cause the invalidity, either by an express assent to be bound, or by some implied waiver of the objections. *Hale* v. *Union Insurance Company,* 32 N. H. 299; *Leathers* v. *Farmers' Insurance Company,* 24 N. H. 262.

There is an intrinsic absurdity in holding that to be an insurance by which a party is bound to make good another's loss, only in case he pleases to do it.

*Judgment for the plaintiff.*